**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | |
|---|---|
| **WILLIAM H. VIEHWEG,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 3:23-cv-3047-MFK** |
| ) | |
| **INSURANCE PROGRAMS** ) | |
| **MANAGEMENT GROUP, LLC, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

MATTHEW F. KENNELLY, District Judge:

Plaintiff William Herman Viehweg has sued twenty-four defendants[1] for violations of the Racketeer Influenced Corrupt Organizations Act (RICO). All of the defendants have filed or joined in one of three motions to dismiss Viehweg's amended complaint, contending, among other things, that Viehweg fails to state a RICO claim under 18 U.S.C. § 1962(c) and a RICO conspiracy claim under 18 U.S.C. § 1962(d). For the reasons below, the Court grants the defendants' motions.

**Background**

The pending motions to dismiss concern Viehweg's amended complaint. The

---

[1] The defendants are Henry Meisenheimer & Gende, Inc. and its president Bradley G. Hummert (HMG defendants); Brown & James, P.C. and attorneys John P. Cunningham and Daniel G. Hasenstab (BJPC defendants); Illinois Program Managers Group and its president, Gregg Peterson (IPMG defendants); O'Halloran, Kosoff, Geitner & Cook, an attorney at the firm, Joseph Bracey and former attorney Karen McNaught (OKGC defendants); City of Mount Olive Mayor John Skertich; City Clerk Melinda Zippay; Alderman Marcia Schulte; city council members Howard Hall, Richard Webb, Ernie Parish, Steve Remer, Leah Wheatley, John Goldacker and Chuck Cox; police chief Molly Margaritis; former police chief Joe Berry; streets department supervisor Ronald Bone; and city attorney Dan O'Brien (Mount Olive defendants).

crux of Viehweg's claims is that the defendants engaged in a conspiracy to illegally

assert control over his garage, retaliate against him for challenging their conduct, and

conceal their own misconduct.  *See* Pl.'s Am. Compl. ¶¶ 70-74.  Viehweg alleges that

the conspiracy involves various Mount Olive, Illinois (Mt. Olive) public officials; the City's

insurance company Illinois Program Managers Group (IPMG); O'Halloran, Kosoff,

Geitner & Cook (OKGC), the law firm IPMG hired to defend the City in a previous

lawsuit brought by Viehweg; the engineering firm Henry, Meisenheimer & Gende, Inc.

(HMG); and the law firm that represented HMG in the prior suit, Brown and James, P.C.

(BJPC).  For the purposes of the motions to dismiss, the Court takes the amended

complaint's well-pleaded factual allegations as true.  *See, e.g., Tamayo v. Blagojevich*,

526 F.3d 1074, 1081 (7th Cir. 2008).

Viehweg has resided in Mt. Olive's second ward for over thirty years.  He has a

garage on his property.  Mt. Olive alderman Schulte, Viehweg's neighbor, considers the

garage an "eyesore."  Pl.'s Am. Compl. ¶ 47.  In 2012, Mt. Olive officials served a notice

on Viehweg informing him that the City had deemed his garage an "unsafe building."  *Id.*

¶ 50.  Mt. Olive served Viehweg with additional unsafe building notices on September 4,

2013 and April 1, 2014.  The 2013 and 2014 notices included a letter from City Building

Inspector Hummert stating that he had conducted a "visual exterior inspection" on

Viehweg's garage which confirmed that the building was "dangerous and unsafe."  *Id.*

¶¶ 55-57.  Mayor Skertich brought a petition to demolish Viehweg's garage in the

Macoupin County Circuit Court, and the trial court ruled in the City's favor.  The

Appellate Court of Illinois, Fourth District, reversed the decision, ruling that under Mt.

Olive's unsafe building ordinance, the Mayor lacked the authority to bring suit seeking

the demolition of Viehweg's garage without the approval of City Council.

On March 3, 2021, Viehweg received another unsafe building notice.  The notice stated that if the building was not "put into safe condition or demolished" within ninety days, Mt. Olive would seek an order from the Circuit Court authorizing such action.  Pl.'s Am. Compl., Ex. 1.  The Mt. Olive City Council reviewed the notice at a May 3, 2021 meeting.  A few days later, Mt. Olive Street Department supervisor Bone authorized the placement of city barricades and caution tape on Viehweg's property.  Mt. Olive police chief Margaritas continues to enforce the unsafe building notice.

On June 3, 2021, Viehweg filed suit in the federal district court for the Central District of Illinois.  In his complaint he alleged that Mt. Olive officials and HMG had violated his constitutional rights through the repeated issuances of unsafe building notices for his garage.  IPMG hired OKGC to defend Mt. Olive and various officials against the lawsuit.  BJPC represented HMG and Hummert.  The defendants filed motions to dismiss Viehweg's complaint for failure to state a claim.

On December 9, 2021, City Clerk Zippay left a message on Viehweg's voicemail stating that she had a question about his trash service given that he is "not living in town."  Pl.'s Am. Compl. ¶ 90.  Viehweg objected to Zippay's suggestion that he longer resided in Mt. Olive.  McNaught, in her capacity as an attorney for Mt. Olive, asserted in an email to Viehweg that she knew of no rules that prohibited Zippay's communications, and she expressed her opinion that Viehweg was "mistaken" in his belief that the call consisted of "nefarious conduct."  Pl.'s Am. Compl., Ex. 2.

Viehweg filed a motion for leave to amend his complaint to add a RICO claim and include additional defendants.  Bracey, Cunningham and Hasenstab elected to appear

3

as their own attorneys in the suit.  Hummert, HMG, Hasenstab, Cunningham and BJPC opposed the motion, stating in their brief "[t]his Court can review [Viehweg's] proposed Third Amended Complaint itself and immediately recognize that it is pure gibberish." Pl.'s Am. Compl. ¶ 108.  On June 16, 2022, a magistrate judge denied Viehweg's motion for leave to file an amended complaint.  On April 21, 2023, the district court granted the defendants' motions to dismiss Viehweg's lawsuit.

On February 2, 2023, Viehweg filed the present suit, alleging multiple RICO violations.  The defendants filed motions to dismiss.  Viehweg then elected to file an amended complaint (as was his right) rather than responding to the motions to dismiss. The defendants then filed the present motions to dismiss.[2]

## Discussion

### A.    Failure to state a RICO claim

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Ashcroft*, 556 U.S. at 678).  The Court "accept[s] all factual allegations in the complaint and draw[s] all reasonable inferences from those facts in favor of the plaintiff," but it is "not required to

---

[2] The BJPC defendants [dkt. no. 39], the HMG defendants [dkt. no. 41] and the OKGC, IPMG and Mount Olive defendants [dkt. no. 45] have filed separate motions to dismiss. This opinion addresses all three motions.

ignore facts alleged in the complaint that undermine the plaintiff's claim." *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001). Furthermore, the Court may reject "sheer speculation, bald assertions, and unsupported conclusory statements." *Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020). Finally, for RICO claims, "a fuller set of factual allegations may be necessary to show that relief is plausible." *Tamayo*, 526 F.3d at 1083.

Viehweg alleges violations of 18 U.S.C. §§ 1962(c) and 1962(d), which state:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962(c), (d).

## 1.    18 U.S.C. § 1962(c)

A RICO claim under section 1962(c) comprises the following four elements: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity.[3] *See Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 336 (7th Cir. 2019). A plaintiff must plausibly allege all four elements to state a viable RICO claim. *Id.* The defendants argue that Viehweg has failed to adequately allege predicate acts of racketeering activity.

---

[3] To state a civil RICO claim the plaintiff also must allege "an injury to [his] business or property result[ed] from the underlying acts of racketeering." *Empress Casino Joliet Corp. v. Johnston*, 763 F.3d 723, 728 (7th Cir. 2014) (quotation omitted) (alterations in original). Because this Court concludes that Viehweg has failed to adequately plead racketeering activity, it need not address whether he has also plausibly alleged any injury to business or property.

5

### a.  Racketeering activity

Racketeering activity is limited to the specific criminal acts, also known as predicate acts, set forth in 18 U.S.C. § 1961(1).  In pleading predicate acts, "conclusory allegations that various statutory provisions have been breached are of no consequence if unsupported by proper factual allegations."  *Jennings v. Emry*, 910 F.2d 1434, 1438 (7th Cir. 1990).  Viehweg alleges that the defendants engaged in three types of predicate acts: extortion, bribery and obstruction of justice.

### i.  Extortion

Viehweg alleges that fifteen defendants "entered into a conspiracy to knowingly obtain or exert unauthorized control" over his garage in violation of 720 Ill. Comp. Stat. 5/16-1(a)(1).  Pl.'s Am. Compl. ¶ 79.  Illinois's criminal code recognizes extortion as a form of theft.  *Guzell v. Hiller*, 223 F.3d 518, 521 (7th Cir. 2000).  The relevant Illinois statute provides, in relevant part, that "[a] person commits theft when he or she knowingly . . . [o]btains or exerts unauthorized control over property of the owner."  720 ILCS 5/16-1(a)(1).

Viehweg alleges that Skertich, Berry and Zippay committed extortion by serving and enforcing an unauthorized unsafe building notice on his garage.  He further alleges that the remaining twelve defendants had "personal knowledge" of their actions and "acted to cover-up the fact that said notice was authorized."  Pl.'s Am. Compl. ¶ 81. Viehweg contends that the notice was "unauthorized" because it "was not authorized by the corporate authorities as required by 65 ILCS 5/11-31-1."  *Id.* ¶ 80.  Viehweg supports his argument by pointing to his previous litigation with Mt. Olive, in which an Illinois appellate court ruled that the Mayor had violated 65 Ill. Comp. Stat. 5/11-31-1 by

failing to obtain City Council approval prior to filing a petition regarding Viehweg's garage. *City Of Mount Olive v. Viehweg*, 2017 IL App (4th) 160370-U, ¶ 26. In that case, however, the court held that the mayor "lacked authority to bring suit seeking repair or demolition under Section 11-31-1" without the City Council's approval, not that the mayor lacked authority to serve the unsafe building notice. *Id.* ¶ 24.

Even if the defendants failed to secure the proper authorization before serving the unsafe building notice, Viehweg has not alleged that the defendants exercised the "control" over his property required to constitute an offense under Illinois law. The definition of "obtaining or exerting control over property" includes "taking, carrying away or the sale, conveyance, or transfer of title to, or interest in, or possession of property." 720 Ill. Comp. Stat. 5/15-8. The notice that the City served affirmed that Viehweg's garage had been deemed "[d]angerous and/or unsafe," and it stated that if the property was not "put into safe condition or demolished" within ninety days the City would apply for a petition to authorize such action. Pl.'s Am. Compl., Ex. 1. Viehweg notes that the defendants "caused to be served," "signed and served" and "applied the City seal" to the unsafe building notice. Pl.'s Resp. to Mt. Olive, IPMG & OKGC Defs.' Mot. to Dismiss at 6. But aside from the conclusory (and thus insufficient) allegation that the notice "detail[s] the city officials' unauthorized control over the plaintiffs [sic] property," Viehweg does not allege that the officials took possession of or otherwise exerted control over his garage. *Id.* at 5. The service of the notice, without more, is insufficient to constitute the obtaining or exertion of control over Viehweg's garage.

The only action that Viehweg alleges Mt. Olive officials took was to notify him that his garage had been deemed dangerous and/or unsafe and put him on notice of

possible circuit court action in the future.  That simply is not "obtaining or exerting control," as required to constitute extortion.  In short, Viehweg has not alleged commission of the offense of extortion under Illinois law.  For this reason, the Court need not address whether a violation of 720 ILCS 5/16-1(a)(1) qualifies as a predicate act under 18 U.S.C. § 1961(1).

### ii.    Bribery

Viehweg's bribery allegations are likewise legally deficient.  He alleges that City Clerk Zippay's recorded message inquiring about trash service was "intended to require that [Viehweg] state, under oath or affirmation, that he did not reside at his property." Pl.'s Am. Compl. ¶ 91.  Viehweg's complaint cites both federal and Illinois bribery statutes.

Under the portion of the federal bribery statute that Viehweg cites, 18 U.S.C. § 201(c)(2), bribery consists of "directly or indirectly, giv[ing], offer[ing], or promis[ing] anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court."  Viewing his allegations as expansively as possible, Viehweg appears to argue that Zippay asserted that Viehweg was "not living in town" to encourage him to state that he had vacated his property, which would then advance the City's alleged efforts to demolish his garage.  But Zippay's call cannot constitute bribery under section 201 because the statute only "prohibits bribery of public officials and witnesses." *United States v. Robbins*, 197 F.3d 829, 848 (7th Cir. 1999).  Viehweg is not a public official, and there is no basis for a contention that he was a current or prospective witness in a federal judicial proceeding at the time of the telephone call.

Furthermore, Viehweg's description of the contents of the message makes it clear that Zippay's statements do not amount to bribery or attempted bribery.  Zippay stated that she had an inquiry regarding Viehweg's trash service, expressed confusion about whether or not he was receiving trash service given that he was "not living in town," and asked Viehweg to return her call.  Pl.'s Am. Compl. ¶ 91.  Zippay was not communicating with Viehweg in the context of a "judicial proceeding," so there is no basis to contend that any statements Viehweg provided in response her voicemail message could be considered "testimony under oath or affirmation."  That aside, even assuming that Viehweg is correct about the intent of the call, he does not allege that Zippay gave, offered, or promised anything of value to Viehweg.  Thus his allegations do not give rise to a RICO predicate act under the federal bribery statute.

Under the Illinois bribery statute, an individual commits bribery when, "[w]ith intent to influence the performance of any act related to the employment or function of any public officer, public employee, juror or witness, he promises or tenders to that person any property or personal advantage which he is not authorized by law to accept[.]"  720 Ill. Comp. Stat. 5/33–1(a).  This statute does not apply to Viehweg; he has not alleged that he was "a public officer, public employee, juror or witness" at the time he received Zippay's message.  *Id*.  Moreover, Zippay's call did not contain any offer or promise of property or personal advantage.  *See* Pl.'s Am. Compl. ¶ 91.  In short, Viehweg's allegations regarding Zippay's conduct do not amount to bribery under Illinois law.

Viehweg further contends that when he shared his suspicions regarding Zippay's message, attorney McNaught "conducted a fraudulent investigation, produced a

9

fraudulent report, and fraudulently stated in an email to [Viehweg] that she knew of no law that would prohibit the above said communication."  *Id.* ¶¶ 94, 105.  Giving a false statement alone does not constitute a predicate act under RICO.  *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1021 (7th Cir. 1992).  And Viehweg's allegation that McNaught provided legal services to Zippay is insufficient to support a RICO claim against McNaught.  *See Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 728 (7th Cir. 1998) ("[S]imply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c).").

In sum, Viehweg has failed to adequately allege a RICO bribery offense.

### iii.    Obstruction of justice

Viehweg alleges that during the 2021 litigation, the HMG and BJPC defendants filed an objection to his motion for leave to amend his complaint that contained a "demonstratively false" statement that the contents of his amended complaint were "pure gibberish."  Pl.'s Am. Compl. ¶¶ 106-109.  Viehweg argues that this false statement amounted to obstruction of justice under 18 U.S.C. § 1503, but this argument is unpersuasive.  Obstruction of justice encompasses attempts to "corruptly or by threats or force, or by any threatening letter or communication, influence[], obstruct[], or impede[], or endeavor[] to influence, obstruct, or impede, the due administration of justice."  18 U.S.C. § 1503.

Viehweg's allegations, taken as true, do not rise to the level of an "endeavor" to "impede the due administration of justice," as opposed to a routine case of zealous advocacy.  *See United States v. Cueto*, 151 F.3d 620, 632 (7th Cir. 1998) (recognizing importance of distinguishing good faith advocacy from criminal conduct in applying

section 1503).  Section 1503 reaches a "broad spectrum of conduct" that facilitates "the miscarriage of justice."  *United States v. Cueto*, 151 F.3d 620, 631 (7th Cir. 1998); *United States v. White*, 698 F.3d 1005, 1013 (7th Cir. 2012) (soliciting harm to juror); *United States v. England*, 507 F.3d 581, 589 (7th Cir. 2007) (threatening juror); *United States v. Macari*, 453 F.3d 926, 936 (7th Cir. 2006) (inducing false testimony).  But Viehweg has cited no authority for the proposition that the federal obstruction of justice statute applies to an arguably overwrought statement made in a filing with the court, which is what is at issue here.  That aside, the defendants' conduct did not involve threats or force, and despite Viehweg's repeated conclusory assertions that the defendants acted "corruptly," he has not pleaded any factual allegations that plausibly support the proposition that the defendants acted "with the purpose of obstructing justice."  *United States v. Machi*, 811 F.2d 991, 996 (7th Cir. 1987) (quotation omitted).  The judge to whom the "gibberish" argument was addressed was fully able to review the relevant filing on her own and determine whether it was intelligible.

Viehweg's argument that Bracey, Cunningham and Hasenstab violated section 1503 by appearing as their own attorneys also fails.  As the Court has concluded earlier in the present litigation, the argument is based on a misunderstanding of 28 U.S.C. § 1654.  Section 1654 says that in any U.S. court, "the parties may plead and conduct their own cases personally or by counsel . . . ."  Viehweg seems to read the "or" as meaning that a party who is a lawyer cannot represent himself, and he contends that the attorney-defendants' *pro se* appearances are prohibited because it would "create an unlawful conflict of interest."  Pl.'s Am. Compl. ¶¶ 116, 139, 147.  The Supreme Court has recognized the potential issues that may arise when attorneys appear on their own

behalf in court but has never ruled that they are prohibited from doing so.  *See Kay v. Ehrler*, 499 U.S. 432, 437 (1991) ("Even a skilled lawyer who represents himself is at a disadvantage in contested litigation.").  Neither 28 U.S.C. § 1654 nor any other federal statute or rule bars attorneys from representing themselves in court.  *See Black v. Wrigley*, 997 F.3d 702, 713 (7th Cir. 2021) (citing 28 U.S.C. § 1654) ("[C]ivil litigants, like criminal defendants, have a statutory right to proceed pro se.").  Similarly, the defendants' appearances as their own attorneys do not violate any Illinois Supreme Court rules.  *See In re Thomas Consol. Indus., Inc.*, 289 B.R. 647, 652-53 (N.D. Ill. 2003) (reversing disqualification of attorney who appeared on behalf of himself as well as another party).

For the reasons discussed, the Court holds that Viehweg has not plausibly alleged the commission of even one predicate act in his amended complaint.  Because the RICO statute requires at least two predicate acts, his claim under section 1962(c) is dismissed for failure to state a claim.

## 2.      18 U.S.C. § 1962(d)

When a plaintiff "fail[s] to establish a violation of section 1962(c), their section 1962(d) claim based on the same facts must fail as well."  *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 677 (7th Cir. 2000).  Because Viehweg has failed to adequately allege the defendants engaged in racketeering activity, the Court dismisses the RICO conspiracy claim on this basis.

## Conclusion

For the foregoing reasons, the Court grants the defendants' motions to dismiss [39] [41] [45].  Unless plaintiff files, by January 16, 2024, a motion for leave to amend

along with a proposed second amended complaint including at least one viable claim

over which the Court has jurisdiction, the Court will enter judgment against him.

MATTHEW F. KENNELLY
United States District Judge

Date:  December 29, 2023